**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **NICOLE WALLACE**, *et al.*, | * | |
| **Plaintiffs,** | * | |
| v. | * | Case No. 17-cv-03718-CCB |
| **MAYOR AND CITY COUNCIL**. **OF BALTIMORE,** *et al.*, | * | |
| | * | |
| **Defendants.** | ****** | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT MAYOR AND CITY COUNCIL OF BALTIMORE'S
MOTION TO DISMISS**

Defendant Mayor and City Council of Baltimore (the "City"), by and through undersigned counsel, submits this memorandum of law in support of its motion to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

**INTRODUCTION**

Plaintiffs Nicole Wallace and Daquan Wallace (collectively "Plaintiffs") have brought the present action against the City, the Secretary of Public Safety and Correctional Services as well as former Baltimore City Detention Center ("BCDC") wardens and corrections officers (collectively "Defendants") alleging federal and state claims stemming from the brutal attack and beating of Daquan Wallace on December 18, 2014 while an inmate at the BCDC. Plaintiffs' Complaint describes five constitutional claims (Counts I-III, VI-VII), two federal statutory claims (Counts IV-V), and ten claims under Maryland law (Counts VIII-XVII) against Defendants. The only claim specifically alleged against the City is a *Monell* liability claim under 42 U.S.C. § 1983 concerning unconstitutional pattern and practice and the City's non-delegable duty to ensure the safety of inmates and detainees of the BCDC (Count VII).

1

Plaintiffs' Complaint, however, fails to state a viable claim against the City because, as a matter of Maryland and federal law, the City does not have legal control over the BCDC. The BCDC is a State correctional facility operated by the Department of Public Safety and Correctional Services ("DPSCS") established as a principal department of the Maryland State government. Consequently, the City neither controls the BCDC nor employs the BCDC's individual employees and agents. Moreover, Plaintiffs have failed to comply with the Local Government Tort Claims Act ("LGTCA") notice requirement with respect to their claims against the City. Accordingly, Plaintiffs' Complaint should be dismissed as to the City with prejudice and without leave to amend.

## BACKGROUND

On September 18, 2017, Plaintiffs brought a declaratory judgment action in the Circuit Court for Baltimore City against the City, Marilyn J. Mosby State's Attorney for Baltimore City, the State of Maryland, and Brian E. Frosh Attorney General for the State of Maryland alleging violations of the Maryland Public Information Act ("MPIA"), Md. Code Ann., General Provisions §§ 4-101 through 4-601 and the Freedom of Information Act ("FOIA"). *See Nicole Wallace, et al. v. Mayor and City Council, et al.,* Bal. City Cir. Ct. Case No. 24-C-17-004675. In that case, Plaintiffs allege that Defendants violated the MPIA and FOIA by failing and/or refusing to respond to their MPIA and FOIA requests concerning the BCDC and the brutal attack of Daquan Wallace on December 18, 2014.

Notwithstanding the fact that Plaintiffs had not served MPIA or FOIA requests on the City, on November 2 and 16, 2017, the City advised Plaintiffs that the BCDC is an agency of the State and that the City would not have any of the requested information. Nevertheless, counsel for Plaintiffs requested that the City search its files to ensure that there was no information concerning this incident. Upon learning that the City did not have responsive information, Plaintiffs

voluntarily dismissed their claims against the City on November 20, 2017.  *See, Wallace*, Bal. City Cir. Ct. Case No. 24-C-17-004675, Dkt. No. 8.

Subsequently and despite knowing that the BCDC is not a City agency, on December 15, 2017, Plaintiffs filed the instant action against the City in the U.S. District Court for the District of Maryland.  Plaintiffs' Complaint describes five constitutional claims (Counts I-III, VI-VII), two federal statutory claims (Counts IV-V), and ten claims under Maryland law (Counts VIII-XVII) against Defendants.  The only claim specifically alleged against the City is a *Monell* liability claim under 42 U.S.C. § 1983 concerning unconstitutional pattern and practice and the City's allegedly non-delegable duty to ensure the safety of inmates and detainees of the BCDC (Count VII).  (ECF No. 1, ¶¶ 147-162).  Plaintiffs' claims against the City are founded on the misguided belief that the City operates the BCDC, that it oversees and employs the BCDC's correctional officers and detention facility employees, as well as oversees the detention facility.  *Id.* ¶¶ 14, 152.  Plaintiffs also allege that the City "instituted and maintained formal and informal customs, policies and practices" at the BCDC and that it failed "to establish effective procedures, rules, orders, guidelines and practices to ensure that [ ] violations do not occur."  *Id.*  ¶¶ 153-157.

Without an agency relationship between BCDC employees and the City, the City cannot be held vicariously liable for their alleged actions.  Without any legal authority for the City to make policy for the BCDC, the City cannot be held directly liable for allegedly instituting bad policies or failing to institute better policies.  For these reasons and the reasons set forth in more detail below, the Complaint does not and cannot state a claim for which relief can be granted against the City and must therefore be dismissed with prejudice as to the City.

3

## **STANDARD OF REVIEW**

The Complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Under the plausibility standard, the Complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Thus, in considering the motion to dismiss, this Court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Well-plead factual allegations contained in the Complaint are assumed to be true "even if [they are] doubtful in fact," but ***legal conclusions are not entitled to judicial deference***. *See Twombly*, 550 U.S. at 570 (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)). Even though Rule 8(a)(2) requires only a short and plain statement showing entitlement to relief, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

To survive a Rule 12(b)(6) motion, the legal framework of the Complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The plausibility standard requires that the pleader show more than a sheer possibility of success. *Twombly*, 550 U.S. at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, this Court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.* at 679.

**ARGUMENT**

I. **THE COMPLAINT CANNOT STATE ANY CLAIM AGAINST THE CITY UPON WHICH RELIEF CAN BE GRANTED BECAUSE THE CITY DOES NOT CONTROL THE BCDC OR ITS EMPLOYEES AS A MATTER OF LAW.**

Although the Complaint lists the City as a defendant and asserts various incorrect legal conclusions regarding City liability, the Complaint does not actually allege any facts regarding actions or inactions *on the part of the City* that would support those conclusions. The only factual allegations concern alleged actions of individual BCDC correctional officers and administrators as well as the Secretary of Public Safety and Correctional Services, none of whom are agents or employees of the City.

Under the Correctional Services Article of the Maryland Code, the BCDC is a state correctional facility operated by the State. Md. Code. Ann., Corr. Servs. §§ 1-101, 5-201, 5-202. Specifically, the BCDC is operated by the Division of Pretrial Detention and Services, a Division of "the [DPSCS] established as a principal department of the State government." *Id.* §§ 2-101, 5-101 *et seq.* The warden of the BCDC is appointed by the Commissioner of Correction with the approval of the Secretary of Public Safety and Correctional Services and is in charge of the BCDC. *Id.* § 5-402. The BCDC's warden "is the appointing officer for the officers and employees of the facility," who are compensated "as provided in the State budget." *Id.* §§ 3-215, 10-901.

This Court has recognized that "Baltimore City cannot be held liable for any alleged action or inaction which was later taken or omitted by employees of the [BCDC] . . . . The [BCDC] is operated by the State of Maryland and is staffed by persons employed by the state." *Carter v. Mayor and City Council of Baltimore*, 164 F. Supp. 2d 509, 518 (2001), *decision vacated on other grounds by*, *Carter v. Baltimore County, Maryland*, 39 F. App'x. 930 (4th Cir. 2002). "Wrongful acts undertaken by detention center employees or officials therefore cannot be attributed to the

5

City of Baltimore." *Id.* Courts in the State of Maryland have also recognized on numerous occasions the relationship between DPSCS employees and the State. *See, e.g.*, *Bailey v. Md. State Dep't of Pub. Safety & Corr. Servs.*, 635 A.2d 432, 433, 333 Md. 397 (Md. 1994) ("Lieutenant Ronnie Bailey appeals from a decision of the Court of Special Appeals denying him the right, as a supervisory employee of the Maryland State Department of Public Safety and Correctional Services (hereinafter "Department of Public Safety"), to represent other State employees in grievance proceedings against the State."); *Hawkins v. Dep't of Pub. Safety & Corr. Servs.*, 602 A.2d 712, 712, 325 Md. 621 (Md. 1992) (concerning the appeal of Hawkins, an employee of the "Division of Correction, Department of Public Safety and Correctional Services of the State of Maryland," of his discharge as a probationary correctional officer); *Dep't of Pub. Safety & Corr. Servs. v. Cole*, 672 A.2d 1115, 1118, 342 Md. 12 (Md. 1996) ("This appeal arises out of an administrative proceeding initiated by Petitioner, the Department of Public Safety and Correctional Services (Department)[the State], for the removal of Respondent, Gregory Cole, from his employment as a Correctional Officer Lieutenant at the Roxbury Correctional Institution in Hagerstown.").

As a matter of Maryland law, the City does not have legal control over the BCDC, its policies, its practices, its customs, its officers or its employees. *See, e.g.*, Md. Code Ann., Corr. Servs. §§ 2-109, 3-209, 3-215, 3-220. In fact, the Maryland Code further states that, "[w]ith the approval of the Secretary, the care, control, or supervision of an individual in a State correctional facility, on parole, or on mandatory supervision may be assigned to *any employee of the Department* who has proper certification from the Maryland Correctional Training Commission." *Id.* at § 2-117 (emphasis added). Without such control – which is absent as a matter of law – none

of the counts ascribing actions and/or inactions to the BCDC or its officers and administrators provide a basis for any kind of liability against the City.

Although the Complaint asserts the erroneous legal conclusion that the City contributed to and was the proximate cause of the alleged constitutional violations in this case, such conclusions of law couched as facts do not constitute allegations sufficient to survive a motion to dismiss. *See, e.g.*, *Twombly*, 550 U.S. at 570. When, as here, the law clearly shows that the legal relationship between two entities is different from the relationship asserted or implied in a complaint, the complaint's assertions do not change the law and cannot be given deference at the expense of established law. Furthermore, the allegations in the Complaint are a logical absurdity, as the accusations against the City are that it (1) failed to "ensure the safety of inmates and detainees" of the BCDC, (2) "instituted and maintained formal and informal customs, policies, and practices that foster, promote and encourage employees to violate the rights of citizens," and (3) failed to "establish effective procedures, rules, orders, guidelines and practices to ensure" to investigate allegations of violations and to "take even elementary steps to protect citizens from the type of abuses detailed." (ECF No. 1, ¶¶ 147-162). The law, however, does not give City authority over the BCDC and its employees. As such, the Complaint seeks to hold the City liable for failing to act *ultra vires*. Holding an entity liable for failing to act beyond its legal authority is contrary to the law and would subject every entity to equal liability.

As discussed above, the laws of Maryland (as well as the precedent of both this Court and Maryland state courts) make it abundantly clear that the BCDC is not a City agency and that the City does not control the BCDC or its officers, employees and agents. Plaintiffs' Complaint cannot allege its way around that clear matter of Maryland law. As all the claims in the Complaint require either an agency relationship or a legal control relationship in order to implicate the City, neither

of which exists as a matter of law, no claim has been stated upon which relief can be granted as to the City, and the City should be dismissed with prejudice from this action.

## II. THE SECTION 1983 CLAIMS AGAINST THE CITY FAIL AS A MATTER OF LAW.

In addition to the reasons detailed above, the Complaint also fails to state a claim under Section 1983, and should therefore be dismissed as to the City.

The City cannot be vicariously liable under Section 1983 for the actions of its alleged agents. *See Monell v. Dep't of Social Servs. Of City of New York*, 436 U.S. 658, 691-94, 98 S. Ct. 2018 (1978). "[A] municipality's liability arises only where the constitutionally offensive actions of employees are taken in furtherance of some municipal 'policy or custom.'" *Walker v. Prince George's Cty*, 575 F. 3d 426, 431 (4th Cir. 2009). A complaint which "appears to have merely attached a conclusory allegation of 'policy' to what in essence is a claim based on a single unconstitutional act" must be dismissed. *Giarusso v. Chicago*, 539 F. Supp. 690, 693 (N.D. Ill. 1982).

In this case, the Complaint fails to indicate what **City policy** could have possibly led to Daquan Wallace's injuries. Instead, the Complaint makes the incorrect legal assertion that the City failed to promote policies to ensure the safety of BCDC inmates and detainees and properly investigate violations of those policies. (ECF No. 1, ¶¶ 147-162). As discussed above, however, the BCDC is a State agency and the City does not have the authority to legally control the BCDC's policies.

Moreover, no policy or custom can be "fairly attributable to the" City or be seen as the "moving force" behind the particular constitutional violations. *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027 (1988). It strains credulity to suggest that the

City, an entity with no legal authority over BCDC operations, could have a policy (or lack thereof) that was the moving force of the alleged injuries.

Additionally, the City cannot be liable for the conduct of BCDC employees as it is not a "final policy maker." *See Pembaur v. Cincinnati*, 475 U.S. 469 (1986). "[T]he identification of policy making official is a question of state law." *St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). As a matter of state law, one of the duties of the BCDC warden is to "supervise the government, discipline, and policy of the correctional facility." Md. Code Ann., Corr. Serv. § 3-211. The warden is in charge of the BCDC "subject to the authority of the Commissioner and the Secretary." *Id.* § 5-402. The Secretary of Public Safety and Correctional Services adopts "regulations to govern the policies and management of correctional facilities in the Department in accordance with Title 10, Subtitle 1 of the State Government Article." *Id.* § 2-109. Accordingly, the final policy making official for the BCDC is the Secretary of Public Safety and Correctional Services, an employee of the State of Maryland, not the City of Baltimore.

Thus, the City cannot be liable under 42 U.S.C. § 1983 in this case and Plaintiffs' Section 1983 claims must be dismiss as to the City for failure to state a claim under FRCP 12(b)(6).

### III.   ALL STATE LAW CLAIMS AGAINST THE CITY FAIL UNDER STATE LAW.

In addition to the grounds already discussed above, Plaintiffs' failure to comply with the Local Government Tort Claims Act ("LGTCA") is fatal to their state law claims against the City. Section 5-304(b) of the LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of claim required by this section is given within 1 year after injury." Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(1) (2017). The notice must be in writing and state the time, place, and cause of the injury. *See id.* § 5-304(b)(2). Section 5-304(c) provides that the notice "shall be given in person or by certified mail,

9

return receipt requested . . . to the [Baltimore] City Solicitor." *Id.* § 5-304(c). Under Maryland law, "the LGTCA creates a procedural obligation that a plaintiff must meet in filing a tort action." *Hansel v. City of Laurel*, 25 A.3d 122, 137-38, 420 Md. 670 (Md. 2011). "A plaintiff must not only satisfy the notice requirement strictly or substantially, but also plead such satisfaction in his/her complaint." *Id.* The notice requirement applies to state constitutional tort claims. *Id.* at 130 n.7; *see also Luy v. Baltimore Police Dep't.*, 326 F. Supp. 2d 682, 693 (D. Md. 2004), *aff'd*, 120 F. App'x 465 (4th Cir. 2005). This Court has also recognized that the notice requirement has long been a condition precedent to a plaintiff's right to maintain a tort action for damages under Maryland law, and failure to comply with it will bar such tort claims. *See Renn v. Bd. Of Com'rs*, 352 F. Supp. 2d 599, 602 (D. Md. 2005); *Bibum v. Prince George's Cnty.*, 85 F. Supp. 2d 557, 556 (D. Md. 2000).

Although Plaintiffs state in the Complaint that they "timely filed proper notice under the Maryland State Tort Claims Act and [LGTCA] and [are] in full compliance with said Acts," (ECF No. 1, ¶ 11) the City has not received any writing satisfying strictly or substantially the LGTCA notice requirement. Additionally, no evidence supporting Plaintiffs' compliance with the LGTCA as to the City was attached to Plaintiffs' Complaint. Accordingly, Plaintiffs' failure to comply with the LGTCA is fatal to their state law claims, and these claims must be dismissed as to the City with prejudice. *See, e.g.*, *Bibum*, 85 F. Supp. 2d at 566; *Curtis v. Pracht*, 202 F. Supp. 2d 406, 414 (D. Md. 2002).

## **CONCLUSION**

For all the foregoing reasons, this Court should dismiss Plaintiffs' Complaint as to the Mayor and City Council of Baltimore with prejudice and without leave to amend.

          Respectfully submitted,

          ANDRE M. DAVIS
          Solicitor

          _____/s/_____
          LYDIE E. GLYNN
          Assistant Solicitor
          Federal Bar No. 29902
          Assistant Solicitor
          BALTIMORE CITY LAW DEPARTMENT
          100 North Holliday Street
          Baltimore, Maryland, 21202
          Telephone: 410-396-3930
          Fax: 410-547-1025
          lydie.glynn@baltimorecity.gov
          *Attorneys for Defendant Mayor and City Council of Baltimore*