## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**NICOLE WALLACE**
*Individually and as the Parent and*
*Next Friend of Daquan M. Wallace*
6507 Rosemont Avenue
Baltimore, Maryland 21206

and

**DAQUAN M. WALLACE**
6507 Rosemont Avenue
Baltimore, Maryland 21206

    *Plaintiffs*,

     **vs.**

**STEPHEN T. MOYER**
*Secretary of Public Safety*
*And Correctional Services*
300 East Joppa Road, Suite 1000
Towson, MD 21286

and

**RICKY FOXWELL**
*Former Baltimore City Detention Center*
*Jail Administrator AND*
*Warden for Maryland Department of*
*Public Safety & Correctional Services*
30420 Revells Neck Road
Westover, Maryland

and

**BETTY JOHNSON**
*Former Baltimore City*
*Detention Center Warden*
300 East Joppa Road, Suite 1000
Towson, MD 21286

and

**\* Jury Trial Demanded**

Civil Case No. _____

**OFFICER TAMARA PATTERSON**
*Former Baltimore City Detention Center*
*Corrections Officer*
300 East Joppa Road, Suite 1000
Towson, MD 21286

and

**OFFICER JACKENS RENE**
*Former Baltimore City Detention Center*
*Corrections Officer*
3464 Laurel Grove Road, Apt. 6B
Federalsburg, Maryland 21632

and

**OFFICER ERICKA N. SHIRD**
*Former Baltimore City Detention Center*
*Corrections Officer*
2506 Edgecombe Circle N, Apt. E
Baltimore, Maryland 21215

and

**OFFICER/ MAJOR KAREN MOORE**
*Former Baltimore City Detention Center*
*Corrections Officer*
300 East Joppa Road, Suite 1000
Towson, MD 21286

and

**OFFICER/ SERGEANT LISA PORTEE**
*Former Baltimore City Detention Center*
*Corrections Officer*
3206 Wisteria Avenue
Baltimore, Maryland 21214

and

**OFFICER JOHN DOE #1**
*Former Baltimore City Detention Center*
*Corrections Officer*
City Detention Center

2

300 East Joppa Road, Suite 1000
Towson, Maryland 21286

and

**OFFICER JOHN DOE #2**
*Former Baltimore City Detention Center*
*Corrections Officer*
City Detention Center
300 East Joppa Road, Suite 1000
Towson, Maryland 21286

       *Defendants.*

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiffs, Nicole Wallace, individually and as Parent and Next Friend of Daquan M. Wallace, and Daquan M. Wallace, by and through counsel, Cary J. Hansel, Erienne A. Sutherell, and the law firm Hansel Law, P.C., and brings this action against Defendants: Stephen T. Moyer, Secretary of Public Safety and Correctional Services; Ricky Foxwell, former jail administrator of Baltimore City Detention Center; Betty Johnson, former Warden of Baltimore City Detention Center; Officer/ Lieutenant Tamara Patterson, former Correctional Officer of Baltimore City Detention Center; Jackens Rene, former Correctional Officer of Baltimore City Detention Center; Ericka Shird, former Correctional Officer of Baltimore City Detention Center; Karen Moore, former Correctional Officer of Baltimore City Detention Center; Lisa Portee former Correctional Officer of Baltimore City Detention Center; and as cause therefore states the following:

## INTRODUCTION

1.      This action is brought by Plaintiff Daquan M. Wallace ("Mr. Wallace" or "plaintiff") as a result of the brutal attack he suffered while in custody at the Baltimore City Detention Center, rendering him permanently disfigured and disabled. The facility's Correctional Officers knowingly allowed *and assisted in* facilitating the heinous assault by other inmates against Mr. Wallace, and further assisted in the covering up of the attack.

2.      The attack was a result of Mr. Wallace's resistance to the Black Guerilla Family gang ("BGF" or "gang") which was operating inside of the Baltimore City Detention Center ("Detention Center" or "BCDC"). Mr. Wallace refused to join the gang while in custody at the Detention Center as a pre-trial detainee inmate, being held on an excessive $75,000 bail while awaiting trial for the non-violent charges pending against him.

3.      The violent acts against Mr. Wallace occurred in the context of Detention Center Correctional Officers being routinely involved in criminal activity within the facility and supporting the proliferation of gang related conduct occurring within its walls. Supervisory staff and administrators not only turned a blind-eye to the behavior, but participated in it, which allowed the violence not only to continue, but effectively run rampant.

4.      Administrators and officials were well aware of the atrociously violent acts taking place within the Detention Center based upon numerous complaints, reports of misconduct, and internal investigations, but failed to do anything to correct the misconduct, often times directly participating in it.

4

5.     By 2013, it was notoriously known that the Detention Center had succumbed to the leadership of the Black Guerrilla Family gang after the U.S. Attorney's Office for the District of Maryland, pursuant to an on-going investigation, indicted twenty-seven (27) of the DPSCS Correctional Officers working at the Detention Center.  The various criminal charges against the employees stemmed from their gang-affiliated conduct within the facility while working directly with/ for gang member inmates.  Notably, this indictment occurred nearly eighteen (18) months prior to the specific facts which give rise to this case, providing notice to the Defendant Administrators of the Defendant Officers unlawful actions

6.     Administration did not, however, take action, and following the indictments, conditions within the Detention Center worsened under the gang-related leadership.  Abusing their positions of leadership and authority, Correctional Officers within the Detention Center worked in tandem with gang members, while violent hazing ensued and inmates who refused to join the BGF gang were routinely tortured while under the supervision of Correctional Officers.  Reports were received of Correctional Officers paying gang member inmates to abuse and assault other non-gang member inmates.  Also included in numerous reports are incidents in which corrections officers raped inmates and refused inmates their necessary medical treatment.

7.     It was not until Governor Larry Hogan, in July of 2015, called for the closure of the facility that those subjected to the Detention Center's hostile and unsafe conditions received any reprieve.  In a public address, Governor Hogan stated, "The Baltimore City Detention Center is a disgrace, and its conditions are horrendous.

Ignoring it was irresponsible and one of the biggest failures of leadership in the history of the state of Maryland."

8.      The Detention Center's closure in August of 2015 came too late for many of those in custody who had already suffered irreversible harm from the facility's conditions, especially Mr. Wallace, who will be permanently disfigured and disabled due to the negligent, willful, reckless, and malicious treatment he was subjected to by the Defendants.

## JURISDICTION AND VENUE

9.      Jurisdiction is proper in this Honorable Court under 28 U.S.C. Code § 1331 because this is a civil action arising under the Constitution, laws, or treaties of the United States.  Plaintiffs further invoke supplemental jurisdiction of this Court to hear and decide claims arising under state law, by virtue of 28 U.S.C. § 1367.

10.     Venue is proper in this Honorable Court under 28 U.S.C. § 1391 because the parties are domiciled in Maryland, or organized under Maryland law, and the events at issue took place in Baltimore, Maryland.

**11.**     Plaintiff timely filed proper notice under the Maryland State Tort Claims Act and Local Government Tort Claims Act and is in full compliance with said Acts.

## PARTIES

12.     Plaintiff, Nicole Wallace, is and was at all times relevant to the occurrence complained of herein, an adult citizen of the United States and a resident of Baltimore City, Maryland.

13.     Plaintiff Daquan M. Wallace is and was at all times relevant to the occurrence complained of herein, an adult citizen of the United States and a resident of Baltimore City, Maryland.

14.     Defendant Stephen T. Moyer ("Defendant Moyer") is an adult citizen of the United States and currently serves as the Secretary of Public Safety and Correctional Services, and who stands in the shoes of all of his predecessors for the purposes of this case, whose conduct referred to herein was at all times relevant to his employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law. Defendant Moyer had the capacity and authority to hire, fire, and supervise final policymakers, including all individually named defendants herein.

15.     Defendant Ricky Foxwell is an adult citizen of the United States and at all times relevant hereto was the Jail Administrator for the Baltimore City Detention Center whose conduct referred to herein was at all times relevant to his employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law.

16.     Defendant Betty Johnson is an adult citizen of the United States and at all times relevant hereto was the Warden for the Baltimore City Detention Center whose conduct referred to herein was at all times relevant to her employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law.

17.     Defendant Officer/ Lieutenant Tamara Patterson is an adult citizen of the United States and at all times relevant hereto was a Correctional Officer for the

Baltimore City Detention Center whose conduct referred to herein was at all times relevant to his employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law.

18.     Defendant Officer Jackens Rene is an adult citizen of the United States and at all times relevant hereto was a Correctional Officer for the Baltimore City Detention Center whose conduct referred to herein was at all times relevant to his employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law.

19.     Defendant Officer Ericka Shird is an adult citizen of the United States and at all times relevant hereto was a Correctional Officer for the Baltimore City Detention Center whose conduct referred to herein was at all times relevant to her employment and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law.

20.     Defendant Officer/ Major Karen Moore is an adult citizen of the United States and at all times relevant hereto was a Correctional Officer for the Baltimore City Detention Center whose conduct referred to herein was at all times relevant to her employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law.

21.     Defendant Officer/ Sergeant Lisa Portee, is an adult citizen of the United States and at all times relevant hereto was a Correctional Officer for the Baltimore City Detention Center whose conduct referred to herein was at all times

relevant to her employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law.

22.     All other unidentified Baltimore City Detention Center Correctional Officers whose conduct is referred to herein were at all times relevant hereto employed by Baltimore City Detention Center, and who are responsible for the pattern and practice of misconduct discussed herein and were at all times relevant hereto acting under color of state law.

23.     Officers Jackens Rene ("Defendant Rene"), Officer Ericka Shird ("Defendant Shird"), Major Karen Moore ("Defendant Moore"), and Sergeant Lisa Portee ("Defendant Portee"), along with additional unidentified officers, are hereinafter collectively referred to as "Defendant Officers."

24.     All Defendants are jointly and severally liable for damages and injuries to the plaintiffs described herein.

25.     Defendant Betty Johnson ("Defendant Johnson") and Defendant Ricky Foxwell ("Defendant Foxwell"), collectively referred to as "Defendant Administrators," are and/ or were supervisory officials at the time of the acts described herein.

26.     All individually named defendants, Stephen T. Moyer, Secretary of Public Safety and Correctional Services; Ricky Foxwell, former jail administrator of Baltimore City Detention Center; Betty Johnson, former Warden of Baltimore City Detention Center; Officer/ Lieutenant Tamara Patterson, former Correctional Officer of Baltimore City Detention Center; Jackens Rene, former Correctional Officer of

9

Baltimore City Detention Center; Ericka Shird, former Correctional Officer of

Baltimore City Detention Center; Karen Moore, former Correctional Officer of

Baltimore City Detention Center; Lisa Portee former Correctional Officer of

Baltimore City Detention Center, collectively referred to herein as "Defendants."

### STATEMENT OF FACTS

27.     On December 18, 2014, Daquan Wallace ("Plaintiff"), then only

twenty years of age, was savagely attacked and beaten by other inmates while in

custody at the Baltimore City Detention Center.

28.     The attack occurred inside of the Detention Center in the general

population housing, under the supervision of Detention Center Correctional Officers,

sometime prior to approximately 7:45 PM.

29.     On December 18, 2014, Officers Jackens Rene ("Defendant Rene"),

Officer Ericka Shird ("Defendant Shird"), Major Karen Moore ("Defendant Moore"),

and Sergeant Lisa Portee ("Defendant Portee"), (collectively, along with additional

unidentified officers "Defendant Officers") caused Mr. Wallace to be transferred

from the "J" Unit of housing to the "G" Section of Housing, for the purpose of

allowing him to be subjected to the brutal attack.

30.     There was no reason for the transfer from the "J" Unit of housing to

the "G" Section of Housing other than to assist in facilitating the subsequent beating

of Mr. Wallace, as evidenced by the fact that the transfer occurred approximately

twenty (20) minutes prior to the attack, the timeline of which is demonstrated below:

      a.   At approximately 7:05 PM, Defendant Officers facilitated the transfer

          of Mr. Wallace from the "J" Unit to the "G" Section, which was

approved by Defendant Portee in furtherance of the conspiracy to subject Mr. Wallace to the brutal attack.

b.  Upon information and belief, Defendant Rene then signed off on the transfer.

c.  At 7:20 PM, the "G" Section inmates were transferred to the dining area for dinner.

d.  At approximately 7:32 PM, when the "G" Section is alleged to be vacant of inmates, with the known exception of at least three (3) cells (not including Mr. Wallace's), the attack on Mr. Wallace occurs.

e.  At approximately 7:45 PM, "G" Section inmates return from the dining area to the "G" Section, at which time the attack on Mr. Wallace is ending and witnessed by "G" Section inmates.

f.  At approximately 7:58 PM, a medical code is alerted for "G" Section.

g.  At approximately 8:06 PM, an ambulance arrives on scene.

31.   Because of Plaintiffs' prior reporting of unlawful misconduct, Defendant Officers retaliated and conspired with the perpetrators of the beating to ensure that it would take place, they further conspired to provide a cover-up for the inmate perpetrators *and* one-another by providing false and misleading information throughout the subsequent investigation of the incident.

32.   Defendant Officers allowed access to Mr. Wallace's cell and provided for an opportunity for inmates to carry out the gruesome beating by leaving Mr. Wallace's cell unsecured with him alone inside of it, while the other inmates in the "G" Section transferred to the dining hall for dinner.

33.     The Defendant Officers allowed the perpetrators of the attack to remain in the "G" Section, even though they were supposed to be transferred to the dining hall with the rest of the Section inmates.

34.     Defendant Officers falsely claimed that Mr. Wallace left for the dining hall at 19:20 HRS, at which time, Defendant Rene claims to have secured Mr. Wallace's empty cell.

35.     Mr. Wallace did not leave his cell for dinner, instead, he was left alone in his unsecured cell by Defendant Officers, as confirmed by his cellmate, so that other inmates could complete their attack on him.

36.     Defendants further retaliated against Mr. Wallace by failing to timely call for medical assistance.

37.     The attack that rendered Mr. Wallace near death, left blood splattered on his clothing, swelling on his left ear and face, and open, bleeding, cuts on the back of his head.

38.     In an attempt to cover-up the attacks and further assist the perpetrators in the conspiracy, Defendant Officers knowingly and falsely later reported that Mr. Wallace had exited to the dining hall during the time of the attack.

39.     Upon information and belief, eye witnesses to the attack confirm that Defendants Rene and Shird, both assigned to the "G" section on December 18, 2014, assisted in ensuring that the beating took place.

40.     On April 25, 2015, Defendant Johnson was approached by former inmate, Llyod Noonan, who confirmed the Defendant Officers' involvement.

41.     On that same date, Defendant Johnson e-mailed a detective Mark Carter, the following:

> "Today I was leaving the JI building on Madison Street when I was approached by an African American male. The individual addressed me as Warden Johnson. He asked me if they ever found out who killed the young boy on G-Section. In December. I asked him his name but he refused to give it to me stating he was there when it happened but has since been released. I did not recognize the individual, however I believe I could recognize him if I saw again. He stated the boys Flatline, Meatball and D-Nice beat him up and put him back in his bed, He went on to say they are BGF. In addition, he went on to say Ofc. Sheraton was on the section and allowed these assaults and robberies to occur. Based on this information I had my intel Lieutenant Hines run the nicknames and see if they were listed in the data base and who was working the section on the assault of the assault. Please see the lieutenants response below…"

42.     It was confirmed that Defendants Rene and Shird were working the "G" Section on December 18, 2014.

43.     Defendant Shird is believed to be "Ofc. Sheraton," which was a misspelling in Defendant Johnson's e-mail.

44.     Upon information and belief, Defendant Administrators knew about the Defendant Officers' participation in the attack against Mr. Wallace.

45.     There was no investigation into Defendant Shird's or Rene's actions or involvement.

46.     The lack of investigation into the allegations against Defendant Officers proves knowledge on the part of the Defendants and shows Defendants' complicity to the conduct described herein.

47.     The African American male referenced by Defendant Johnson was later confirmed to be Llyod Noonan.

48.     Defendant Moore assisted in covering up the attack by providing a false timeline of events, alleging that medical assistance had been called for Mr. Wallace at 19:32 HRS, when in fact, Mr. Wallace had been left in his cell without medical assistance until 19:58 HRS, when the call was actually placed.

49.     Defendant Moore provided false statements concerning review of surveillance footage, alleging that nothing had been captured on video.

50.     The Defendants failed to properly supervise the facility and the inmates housed there, and failed to properly perform the basic essential functions of their duties, placing Mr. Wallace in the zone of danger.

51.     Mr. Wallace was not a member of the BGF Gang and Correctional Officers deliberately transferred him from his cell in the "J" Unit, to a cell in the "G" Unit, where less than twenty minutes later, BGF Gang Member inmates were given access to his cell by Defendant Rene and Defendant Shird.

52.     Mr. Wallace's near-lifeless body had been left inside of his cell after the attack, face down, and was discovered later at which point Mr. Wallace, suffering from his injuries, was non-responsive.

53.     The attack on Mr. Wallace occurred in the general population housing, where Defendant Officers are to be stationed at all times, performing rounds.

14

54.     When the Defendants finally addressed Mr. Wallace's condition, medical assistance on-site was of little help given his progressively worsening state and EMS personnel were called to respond to the scene.

55.     Mr. Wallace was taken to Johns Hopkins Hospital where he was treated for his injuries.

56.     The initial treatment notes reflect that Mr. Wallace sustained a traumatic brain injury, with visible trauma evident from swelling and bleeding of the left ear and left side of Mr. Wallace's face, human lips mark on the left anterior chest wall, and multiple traumas to the left neck.  In addition, a CT scan referenced a fracture to Mr. Wallace's inner eye socket.

57.     Mr. Wallace remained in a comatose vegetative state for nearly one month with a poor prognosis for any recovery.

58.     As a result of the attack, Mr. Wallace suffered a severe traumatic brain injury.  To this date, Mr. Wallace is unable to talk or walk, remains on a ventilator to assist in his breathing function, and requires daily twenty-four (24) care.

59.     Defendants knew of the severity of the dangerous circumstances that Mr. Wallace faced, as he had knowingly been previously targeted by BGF gang members within the BCDC.

60.     Within one-week of his commitment to BCDC, Mr. Wallace had complained to BCDC officials and Defendant Administrators' offices of being targeted for rape and fights as a result of not joining the BGF.

61.     Upon information and belief, when reports are made to Defendant Administrators offices, the Defendant Administrators have knowledge of the reports.

62.     On several occasions, Mr. Wallace spoke with his mother, Nicole Wallace ("Ms. Wallace"), from the BCDC, telling her about the danger he was in because he refused to join the BGF Gang.

63.     In October of 2014, shortly after being committed to the Detention Center, Mr. Wallace informed his mother, Ms. Nicole Wallace (hereinafter "Ms. Wallace") of the threats against his life due to his resistance to the Black Guerilla Family gang within the facility.  Ms. Wallace then began reaching out to the Detention Center via telephone to advise officials and Defendant Administrators' about the threats against her son.  On numerous occasions she spoke with Detention Center staff and told them about the severity of Mr. Wallace's situation, however, her pleadings with them to do something to protect her son were in vein.

64.     Ms. Wallace continuously contacted officials and Defendant Administrators' offices at BCDC, advising them of the severity of the danger that Mr. Wallace faced:

a.  On or about November 5, 2014, Ms. Wallace spoke with Defendant Lieutenant Patterson ("Defendant Patterson") via telephone and advised Defendant Patterson of the death threats against Mr. Wallace being made because he would not join the BGF gang.  Ms. Wallace requested that her son be moved to protective custody.

b.  On or about November 8, 2014, Ms. Wallace spoke with Defendant Johnson via telephone and advised her of the death threats against Mr. Wallace being made because he would not join the BGF gang. Ms. Wallace again requested that her son be moved to protective custody.

16

    c.   On or about November 19, 2014, Ms. Wallace spoke with Defendant

Patterson.  Defendant Patterson acknowledged injury to Mr. Wallace's

eye and stated that she was concerned for his safety and would be

moving him to protective custody.

65.    During a visit to the Detention Center in November 2014, Ms. Wallace

observed bruising on Mr. Wallace.  He was unable to discuss it with her because of

fear for his own safety.

66.    Despite Defendants acknowledging visible injury and acknowledging

that Mr. Wallace was in danger, Mr. Wallace was never moved to protected custody.

67.    At approximately 7:24 AM on December 2, 2014, just over two (2)

weeks prior to the attack described above, Mr. Wallace was medically treated for an

attack that he had sustained that morning, leaving him with bruising about his face

and left eye, a laceration to his lower lip, and a left shoulder abrasion.

68.    Defendants had allowed the attack by other inmates on Mr. Wallace to

occur by failing to intervene and turning a blind eye, leaving Mr. Wallace vulnerable

to the inmates whom Defendants knew were targeting him.

69.    Later that morning, at approximately 10:00 AM, on December 2, 2014,

Mr. Wallace was transported to the Baltimore City Courthouse for a pre-trial

conference.

70.    During transport, Defendants again allowed an attack on Mr. Wallace.

71.    Mr. Wallace was brought before the Honorable Judge Geller that

morning, and his attorney pled for a bail reduction so that Ms. Wallace could post bail

and protect her son from further harm.

72.     The Court acknowledged that Mr. Wallace had fresh cuts and bruising on his face and it was apparent that Mr. Wallace was in danger.

73.     Mr. Wallace was bleeding from one eye while his other eye was nearly swollen shut from the second beating he had sustained that day and because his vision was blurry from the recent assault, Defendant Officers had to guide his walking as he was unable to see where he was going.

74.     Present in the courtroom were Ms. Wallace and Assistant Public Defender Jerome LaCorte, who addressed the court on Mr. Wallace's behalf. Mr. LaCorte expressed the severity of the conditions that Mr. Wallace faced while in custody and pled with the court for intervention, or at a minimum, for a bail review hearing to take place that morning in the hopes of lowering Mr. Wallace's bail or releasing him on his own recognizance.  Unfortunately, a bail review could not take place.

75.     Later that day, at approximately 6:03 PM, Mr. Wallace reported to Defendants that he had been hit in the eye and needed medical treatment as he was having difficulty seeing.

76.     Ms. Wallace called Detention Center officials and Defendant Administrators' offices that night to express her grave concern over her son's welfare, expressing that he was even subjected to assaults while in the presence of Defendant Officers, but such communication, as she had previously experienced, had little to no effect.

77.     Ms. Wallace had been contacting the Detention Center for months to file complaints about the safety and well-being of her son.

78.     For the next two weeks, Ms. Wallace spoke with her son a handful of times, on each occasion, he stated that too many people were present to discuss his safety.

79.     On December 18, 2014, Ms. Wallace received a phone call advising her that she needed to respond to Johns Hopkins Hospital.  The caller would not provide any additional information.

80.     When she arrived to the hospital, Ms. Wallace learned that her son had been unconscious for nearly four hours, that he had been found in his cell face down, and was unresponsive.

81.     While at the hospital, Detention Center officers were present and hid their badges from Ms. Wallace to keep their name tags from her view.

82.     She was told by Detention Center staff that no photographs were to be taken while in the hospital.

83.     Five days passed from the date of the incident before Ms. Wallace heard from Detention Center personnel, at which time no additional information about the attack was provided to her.

84.     While in treatment, Mr. Wallace experienced bed sores, pneumonia, a tracheostomy tube for ventilation, and a feeding tube for nutrition.  To date, the feeding and tracheostomy tubes have been removed, but he is still unable to use his arms and legs, is confined to a chair, unable to talk or write, and undergoes intensive daily therapy.  The charges that he was facing which had placed him in confinement, ultimately weren't pursued.

85.     Defendants failed to protect, supervise, and otherwise perform their jobs as required, so as to appease gang member inmates and others involved in illicit activities, thereby participating in the corrupt and illegal conduct.

86.     Defendants' pattern of practice and conduct caused the brutal attacks on Mr. Wallace.

87.     Defendants failed to timely render aid to Mr. Wallace despite the means and duty to do so.  Defendant Officers have a duty to supervise and observe inmates, and are required to prevent, respond to, and report any incidents between inmates.

88.     Prior to the attack, Mr. Wallace had been committed to the Baltimore City Detention Center on September 3, 2014, for pending charges, as a pre-trial detainee inmate.  As of the incident date of December 18, 2014, more than three months after the initial charges, Mr. Wallace was still in custody for the same pending, non-violent charges, being held on a seventy-five thousand ($75,000) dollar bail.

89.     Defendant Administrators failed to ensure that Defendant Officers were properly trained, and further, failed to adequately supervise Defendant Officers.

90.     Defendant Administrators oversaw—as well as participated in—the day-to-day operations of the BCDC, with their offices based within the facility.

91.     Defendant Officers were the subordinates of the Defendant Administrators.

92.      Based upon the reports to their offices, the Defendant Administrators knew, or should have known, of the substantial risk of harm Mr. Wallace faced.

93.     Based upon the numerous federal indictments of their employees, such as Criminal Case No. ELH-13-0151, Defendant Administrators also had knowledge of the corruption and misconduct occurring at the hands of the Defendant Officers and upon information and belief, had previously been deposed and participated in internal investigations concerning such conduct.

94.     As publicly reported, the BCDC was subject to several audits, which revealed the rampant misconduct and egregious conditions detainees were subjected to. (See Baltimore Sun, June 6, 2013 (explaining that investigations at the facility resulted in federal indictments of inmates and corrections officers accused of acting on behalf of BGF); Baltimore Sun, July 25, 2013 (providing testimony from one official stating that contraband was a visible issue).

95.     Defendant Moyer oversees the entirety of the Department of Public Safety and Correctional Services ("DPSCS"), including nearly 12,000 employees.

96.     As the secretary of DPSCS, Defendant Moyer is by statute assigned the responsibility of carrying out policies as they relate to public safety, crime prevention, correction, parole, and probation.

97.     Despite their knowledge of the serious harm Mr. Wallace faced, and their knowledge of the Defendant Officers' BGF affiliations, Defendant Administrators were deliberately indifferent to Mr. Wallace's rights, failing to act and thereby ratifying the actions of the Defendant Officers.

98.     Defendant Administrators indifference towards Defendant Officers conduct, as demonstrated through their failure to investigate after the fact or take

corrective action prior to the attacks on Mr. Wallace, amounted to tacit authorization of the Defendant Officers' misconduct.

99.     Such authorization not only allowed the attacks on Mr. Wallace to occur, but encouraged them, directly violating Mr. Wallace's rights.

100.    Defendants' actions in not moving Mr. Wallace to protective custody within BCDC were unreasonable.

101.    Defendants were on notice of the serious threats against Mr. Wallace's life and despite the knowledge that security precautions were necessary to safe-guard his well-being, failed to take corrective action, and instead, assisted in facilitating the attacks on Mr. Wallace.

102.    Defendants' failure to train, supervise, and discipline Defendant Officers directly caused the injuries suffered by Plaintiffs.

103.    Defendant Officers had Defendant Administrators consent, authority, and ratification when they facilitated the attacks on Mr. Wallace.

104.    Defendant Administrators were policy making officials, along with Defendant Moyer, and responsible for the operation and implementation of policies and procedures within BCDC.

105.    Defendant Administrators, including Defendants Moyer and Foxwell allowed, fostered and encouraged an environment of injustice and violations of constitutional rights, where Defendant Officers used their positions of authority to further unlawful assaults, attacks, and retaliation against detainees, such as Mr. Wallace.  Defendant Officers were therefore acting with the approval and ratification of Defendant Administrators when committing constitutional violations.

106.    On information and belief, Defendant Moyer and Defendant Administrators had knowledge of the implementation of such policies and procedures, and despite this knowledge, acted with deliberate indifference to detainees' constitutional rights and failed to otherwise take action to correct such customs.

**COUNT I**
**CIVIL RIGHTS ACT [42 U.S.C. § 1983]**
**Fourteenth Amendment**

107.    Plaintiffs adopts and incorporate by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

108.    Defendants engaged in an activity that violated Plaintiff's rights as protected under the Constitution of the United States, violating Mr. Wallace's Due Process rights.

109.    By the actions detailed herein, including, but not limited to: facilitating the attacks on Mr. Wallace, encouraging and failing to prevent the brutal attacks against Plaintiff, the covering up of the attacks against Plaintiff after their occurrence, and the failure to render aid to Plaintiff despite the means and duty to do so, Defendants deprived Plaintiff of his Constitutional rights under the Fourteenth Amendment, including, but not limited to:

  a.    freedom from imprisonment and seizure of freehold, liberty and privilege without due process, and without judgment of his peers;

  b.    freedom from the deprivation of liberty without due process of the law, and without the judgment of his peers;

   c.   freedom from the abuse of power by law enforcement and correctional

officers; and

   d.   freedom from summary punishment.

   e.   freedom from prison officials' and employees' deliberate indifference

to the health and safety of inmates and deliberate indifference to serious

assaults by other inmates.

110.   Plaintiff has a right to be free from summary punishment by the

Defendant Officers.  This right was denied to Plaintiff when Defendant officers

knowingly allowed the brutal attacks by other correctional inmates against Plaintiff

without legal cause, excuse or justification.

111.   Plaintiff has a protected property and liberty interest in his freedom,

his ability to exercise his free will and domain over his person, his ability to be free

from unlawful and unwelcome abuse and attack by prison employees and

administrators, and his ability to practice his chosen profession and earn a living

thereby.

112.   Plaintiff was deprived of numerous protected property and liberty

interests by Defendants.

113.   Plaintiff's rights were denied when Defendant officers refused to

timely render appropriate medical assistance to Plaintiff, despite the means and duty

to do so.

114.   Plaintiff was afforded less process than was due under law by

Defendants in depriving him of the rights in question.

115.    By the actions detailed above, Defendants deprived Plaintiff of his constitutional rights including, but not limited to, freedom from abuse of power by those acting under color of state law and authority.

116.    At all times relevant hereto, Defendants acted under color of State law and in a manner which was not objectively reasonable.

117.    Defendants had a duty to maintain security, prevent disturbances, and take reasonable measures to guarantee safety of detainees, to protect them from violence at the hands of other detainees.

118.    Defendants were deliberately indifferent to Mr. Wallace's safety.

119.    Defendants conduct subjected Mr. Wallace to atypical and significant hardships, in relation to the ordinary conditions for a pre-trial detainee.

120.    At no time relevant to this action, did Mr. Wallace engage in any criminal or illegal act, or act in violation of the policies, regulations, and procedures of BCDC.

121.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work,

past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

**COUNT II**
**CIVIL RIGHTS ACT [42 U.S.C. § 1983]**
**Fourth & Fourteenth Amendment**

122.    The Plaintiffs adopt and incorporate by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

123.    At no time relevant to this action was Mr. Wallace a threat to the safety of any Defendants, himself, or others.

124.    At no time did Mr. Wallace resist detention or attempt to evade detention by flight or otherwise.

125.    At the time of the events complained of herein, Mr. Wallace had a clearly established right to be secure in his person and free from summary punishment.

126.    Any reasonable correctional officer or administrator thereof knew or should have known of these rights at the time of the complained of conduct.

127.    Defendantsacted unreasonably in their conduct towards Mr. Wallace, subjecting him to summary punishment and excessive force and violating his due process rights.

128.    Defendantswere the direct cause of the constitutional violations suffered by Mr. Wallace, which caused near-death, serious bodily injury.

129.    Defendants orchestrated the beatings and attacks on Mr. Wallace, and are directly liable for the resulting conduct.

130.    Defendants participated in a conspiracy to exact serious bodily injury upon Mr. Wallace, and carried out such conspiracy to ensure that the injury occurred.

131.    None of the Defendants took reasonable steps to protect Mr. Wallace, and instead, acted to place him in the zone of danger.

132.    The acts or omissions of all Defendants were the direct causes of Mr. Wallace's resulting injuries.

133.    The individual Defendants  acted in concert and joint action with one another to intentionally deprive Mr. Wallace of his constitutional rights.

134.    At all relevant times herein, all Defendants were acting pursuant to custom, policy, decision, ordinance, widespread habit, practice, and usage in their actions against Mr. Wallace.

135.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

## COUNT III
### CIVIL RIGHTS ACT [42 U.S.C. § 1983]
### Eighth Amendment

121.    The Plaintiffs adopt and incorporate by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

122.    As alleged herein, Defendants maintained a policy and practice of denying rights to detainees within the BCDC.

123.    Defendants' actions, intentionally promulgated and executed for unlawful reasons, i.e., for furtherance of BGF Gang criminal activity, were done in complete disregard for the medical and safety needs of Mr. Wallace.

124.    Mr. Wallace was detained under conditions which posed a substantial risk of harm.

125.    Defendants knew of and completely disregarded the risk posed to Mr. Wallace.

126.    Mr. Wallace was deprived of the minimal civilized measure of life's necessities by the Defendants, who alternatively, deliberately placed Mr. Wallace in substantial risk of serious harm.

127.    Defendants were deliberately indifferent to Mr. Wallace's serious medical conditions.

128.    Defendants were aware of facts from which the inference could be drawn that a substantial risk of harm existed.

28

129.     By facilitating and assisting in the assaultive attacks and beatings exacted upon Mr. Wallace, Defendants deprived him of his right to be free from cruel and unusual punishment.

130.     Defendants engaged in the conduct described herein in bad faith, maliciously, willfully, and in reckless disregard to Mr. Wallace's rights.

131.      As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

**COUNT IV**
**CIVIL RIGHTS ACT [42 U.S.C. § 1985]**
**Conspiracy to Interfere With Civil Rights**

132.     The Plaintiffs adopt and incorporate by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

133.    Defendant Officers' actions against Mr. Wallace were based upon his refusal to join the BGF Gang.

134.    Members of the BGF Gang were not subjected to the treatment and unconstitutional conduct that Mr. Wallace suffered from, at the hands of the Defendants.

135.    Two or more Defendant Officers conspired to commit the acts against Mr. Wallace, directly causing his serious injury.

136.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

**COUNT V**
**CIVIL RIGHTS ACT [42 U.S.C. § 1986]**
**Conspiracy to Interfere With Civil Rights**

137.    The Plaintiffs adopt and incorporate by reference the allegations

contained elsewhere herein with the same effect as if herein fully set forth.

138.    Defendant Officers knew of the conspiracy to cause the violent injuries

to Mr. Wallace, and failed to prevent the wrongful conspiracy.

139.    As a direct and proximate result of the aforesaid conduct, actions and

inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to

suffer and continues to suffer temporary and permanent physical injuries, physical

pain and suffering, mental pain and suffering, including but not limited to, undue

emotional distress, mental anguish, humiliation, embarrassment, loss of respect,

shame, loss of enjoyment of life and disability, an inability to perform and enjoy his

normal and usual activities, and economic damages including, but not limited to, past

and future medical bills and expenses, past and future lost time and wages from work,

past and future lost earning capacity and unnecessary attorneys' fees, all to the great

detriment of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount

to be determined at trial, but in excess of $75,000.00, plus interest, costs and

attorneys' fees, and punitive damages, in an amount to be determined at trial.

**COUNT VI**
**CIVIL RIGHTS ACT [42 U.S.C. § 1983]**
**First Amendment Retaliation**

140.    The Plaintiffs adopt and incorporate by reference the allegations

contained elsewhere herein with the same effect as if herein fully set forth.

141.    Defendant Officers retaliated against Mr. Wallace for reporting the unconstitutional behavior that he was subjected to.

142.    Mr. Wallace's reporting of his injuries was protected conduct.

143.    Defendant Officers' actions in facilitating the attacks on Mr. Wallace permanently chilled his ability to exercise his First Amendment rights.

144.    Defendant Officers' conduct did not reasonably advance a legitimate correctional goal.

145.    Defendant Officers acted purely out of personal motive, with malice and gross negligence, and their actions were the direct and proximate cause of Mr. Wallace's injuries.

146.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

## COUNT VII
## CIVIL RIGHTS ACT [42 U.S.C. § 1983]

## *Monell*-Unconstitutional Pattern or Practice

147.   The Plaintiff adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

148.   Defendant City of Baltimore ("Defendant City") had a non-delegable duty to ensure the safety of inmates and detainees.

149.   The Defendant City's pattern and practice of continually delegating non-delegable duties directly and proximately caused the deprivation of constitutional rights, including rights under the Civil Rights Act (as set forth herein), deprivation of liberty and freedom from abuse of power, represents not a single isolated, accidental or peculiar event, but occurrences in the regular procedures followed by these officers, and thus constitutes a pattern or practice of such conduct.

150.   Prior to the date of this incident, Defendant City permitted and tolerated a pattern and practice of unjustified, unreasonable, and unlawful delegation of duties as those duties pertain to safety and security of inmates.

151.   Defendant City's widespread knowledge of, and out-right participation in, the delegation of duties in violation of citizen's rights constitutes as being an unconstitutional pattern or practice of improper conduct.

152.   In addition, Defendant City caused its employees to believe that their delegation of non-delegable duties pertaining to inmates would not be aggressively, honestly, and properly investigated.

153.   Defendant City should have foreseen that such a policy would promote the proliferation of constitutional violations of inmates' rights.

154.     Defendant City has instituted and maintained formal and informal customs, policies, and practices that foster, promote and encourage employees to violate the rights of citizens.

155.     This is a result of the Defendant City's failure to establish effective procedures, rules, orders, guidelines and practices to ensure that such violations do not occur and to ensure that allegations of such violations will be thoroughly investigated and appropriately punished when found to have occurred.  As a result of this failure, there has been a regular pattern and practice of conduct similar to that complained of here.  This pattern and practice has been manifested in other prior incidents against Defendant City.

156.     Defendant City has failed and refused to take even elementary steps to protect citizens from the type of abuses detailed above.

157.     The policies and customs of the Defendant City as set forth herein, demonstrates a gross disregard for the constitutional and other rights of the public and the Plaintiff.  At the time of the occurrence alleged in this complaint, the Defendant City was operating under unconstitutional customs, policies, and procedures.  These customs, policies, and procedures were a proximate cause of the injuries to the Plaintiff.

158.     As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies, and customs of the Defendant City, the Plaintiff was deprived of his rights under the Constitution of the United States, as detailed above.

159.     In sum, the execution of the policy or custom of Defendant City inflicted injury upon the Plaintiff.

160.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendant City and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

161.     The aforesaid acts of the Defendant City were undertaken with actual malice.

162.     The Plaintiff further alleges that all of his injuries, losses and damages – past, present and prospective – were caused solely by the actions of the Defendant City, as set forth above, without any negligence, want of due care, or provocation on the part of the Plaintiff, either directly or indirectly.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

## COUNT VIII
### Articles 24 and 26 of the Maryland Declaration of Rights

163.     The Plaintiff adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

164.    Defendants engaged in an activity that violated Plaintiff's rights as protected under the Maryland Declaration of Rights, violating Mr. Wallace's Due process rights.

165.    By the actions detailed herein, including, but not limited to: facilitating the attacks on Mr. Wallace, encouraging and failing to prevent the brutal attacks against Plaintiff, the covering up of the attacks against Plaintiff after their occurrence, and the failure to render aid to Plaintiff despite the means and duty to do so, Defendants deprived Plaintiff of his Constitutional rights under the Fourteenth Amendment, including, but not limited to:

a.   freedom from imprisonment and seizure of freehold, liberty and privilege without due process, and without judgment of his peers;

b.   freedom from the deprivation of liberty without due process of the law, and without the judgment of his peers;

c.   freedom from the abuse of power by law enforcement and correctional officers; and

d.   freedom from summary punishment.

166.    Specifically, Defendant Officers' actions were not for penological purposes and were committed with malice and gross negligence, with the intent to cause serious bodily injury to Mr. Wallace.

167.    Defendants acted with deliberate indifference to Mr. Wallace's established rights.

168.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to

suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

### COUNT IX
### Articles 16 and 25 of the Maryland Declaration of Rights

169.     The Plaintiff adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

170.     Defendants engaged in an activity that violated Plaintiff's rights as protected under the Maryland Declaration of Rights, subjecting Mr. Wallace to cruel and unusual punishment.

171.     By assisting in and furthering the violent attacks on Mr. Wallace, Defendant Officers showed a deliberate indifference to Mr. Wallace's right against cruel and unusual punishment.

172.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and that stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical

pain and suffering, mental pain and suffering, including but not limited to, undue

emotional distress, mental anguish, humiliation, embarrassment, loss of respect,

shame, loss of enjoyment of life and disability, an inability to perform and enjoy his

normal and usual activities, and economic damages including, but not limited to, past

and future medical bills and expenses, past and future lost time and wages from work,

past and future lost earning capacity and unnecessary attorneys' fees, all to the great

detriment of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount

to be determined at trial, but in excess of $75,000.00, plus interest, costs and

attorneys' fees, and punitive damages, in an amount to be determined at trial.

## COUNT X
### Article 40 of the Maryland Declaration of Rights

173.    The Plaintiff adopts and incorporates by reference the allegations

contained elsewhere herein with the same effect as if herein fully set forth.

174.    By retaliating against Mr. Wallace for reporting his injuries to medical

staff, his attorney, and on the record in open court, the Defendant Officers

maliciously violated Mr. Wallace's right to free speech under the Maryland

Declaration of rights.

175.    As a direct and proximate result of Defendants' actions to suppress

Mr. Wallace's right to freedom of speech, and as a result of the actions and inactions

of Defendants as stated elsewhere herein, Plaintiff was caused to suffer and continues

to suffer temporary and permanent physical injuries, physical pain and suffering,

mental pain and suffering, including but not limited to, undue emotional distress,

mental anguish, humiliation, embarrassment, loss of respect, shame, loss of

enjoyment of life and disability, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

## COUNT XI
### *Longtin*-Claim Unconstitutional
### Pattern or Practice of Improper Conduct

176.   The Plaintiff adopts and incorporates by reference the allegations contained elsewhere herein with the same effect as if herein fully set forth.

177.   Defendants engaged in an activity that violated Plaintiff's rights as protected under the Maryland Declaration of Rights.

178.   Plaintiff's rights were clearly established, and Defendants knew, or should have known, of such clearly established rights at the time of the complained of conduct herein.

179.   Defendants actions demonstrate an unconstitutional pattern and practice of violating detainees' rights, protected by the Maryland Declaration of Rights.

180.   As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and as stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and

suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

## COUNT XII
### Negligence

181.    Plaintiff adopts and incorporates by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

182.    Defendants had a duty to provide care, safekeeping, and protection, and, *inter alia*, not create or maintain a dangerous condition which could harm persons such as Plaintiff, who were under their control.

183.    Defendants had a special duty to Plaintiff because of the custodial relationship between Defendants and Plaintiff, and because Defendants put Plaintiff in harm's way by placing him in a zone of danger.

184.    Defendants breached their duty of reasonable care under the circumstances by creating a dangerous condition in the form of encouraging and allowing the brutal attack by other inmates to occur against Plaintiff.

185.    Defendants breached their duty of reasonable care by intentionally failing to timely render appropriate medical aid to Plaintiff, despite the means and duty to do so.

186.    Defendants breached their duty of reasonable care when they actually and proximately caused Plaintiff to suffer physical and mental injuries.

187.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and as stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

## COUNT XIII
## Gross Negligence

188.    Plaintiff adopts and incorporates by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

189.    Defendant officers acted recklessly with gross negligence and/or malice when the Plaintiff, under their watch and care, was severely injured by other inmates in attacks allowed, facilitated, and assisted in by the Defendant Officers, thereby suffering from severe injuries, including but not limited to a traumatic brain injury.

190.    Defendant Officers knew or should have known that Plaintiff was assaulted by other inmates. Instead of surveilling the unit in which the attack took place, Defendants intentionally failed to provide supervision and immediately secure the cell and render medical assistance, Defendant Officers did nothing and Plaintiff was only rendered care after he was found lying face down, unconscious, in his cell by his cellmate.

191.    Defendant Officers should have rendered timely medical assistance to Plaintiff upon the initiation of the attack.

192.    Because Plaintiff suffered traumatic brain injury, time was of the essence.  Plaintiff was in dire need of medical assistance.

193.    Defendant Officers acted with gross negligence and/or malice by intentionally and knowingly failing to render timely medical assistance to Plaintiff.

194.    Defendant Officers acted with gross negligence and malice when they intentionally transported Mr. Wallace from the "J" Unit to the "G" Section to allow the gruesome attack to take place.

195.    Defendant Officers acted with gross negligence and malice when they intentionally failed to provide Mr. Wallace safety and security from the attacks of other inmates by facilitating the attacks.

196.    By knowingly allowing the assaults against Plaintiff, by failing to render timely medical aid to Plaintiff, and by assisting in the subsequent cover-up by not properly performing surveillance rounds, Defendant officers were acting with wanton and willful disregard of Plaintiff's rights as if such rights did not exist.

197.    In the alternative, Defendant officers acted with malice when they purposefully allowed inmates' assault of Plaintiff to occur.

198.    Defendant officers demonstrated ill-will and an evil and wrongful motive against Plaintiff when they allowed the brutal attack of Plaintiff to occur.

199.    By allowing the attack against Plaintiff, Defendant officers demonstrated a purpose to deliberately and willfully injure Plaintiff.

200.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and as stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

## COUNT XIV
**Civil Conspiracy**

201.    Plaintiff adopts and incorporates by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

202.    Defendants, or their agents or employees, by agreement and understanding, agreed to and did jointly commit the unconstitutional, unlawful and tortious conduct described herein by unlawful and tortious means, including but not limited to: facilitating violent physical attacks on Mr. Wallace, retaliating against him for not joining the BGF Gang, retaliating against him for reporting the injuries that he sustained, and committing such actions without furthering a legitimate correctional goal.

203.    Each Defendant, or their agents or employees, took at least one unlawful action in knowing furtherance of the conspiracy.

204.    Plaintiff suffered, and continues to suffer, actual legal damage as a direct and proximate result of Defendants' actions.

205.    As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants, as well as those stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer the mental, emotional, and economic damages described above.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

## COUNT XV
### Intentional Infliction of Emotional Distress

206.     At all relevant times herein, Plaintiff was under the care, custody, and control of Defendants, its agents, servants, and employees, including Defendant Officers.

207.     Defendants intentionally inflicted emotional distress on Plaintiff by subjecting him to repeat attacks at the hands of other inmates, ensuring that the attacks were carried out and participating in covering up the attacks.

208.     Through the intentional acts detailed elsewhere herein, the Defendants directly and proximately caused injury to the Plaintiffs.

209.     Defendants engaged in conduct that was intentional and reckless, and in a high degree of probability that emotional distress would result to Plaintiffs.

210.     Defendants knew, or should have known that facilitating the violent attacks on Mr. Wallace would result in extreme emotional distress.

211.     The Defendants' conduct was beyond all possible bounds of decency and intolerable.

212.     The conduct of Defendants was willful and intentional.

213.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and as stated elsewhere herein, Plaintiffs have sustained, and will continue to sustain, actual emotional injuries, including but not limited to severe emotional and mental distress, and economic damages, including but not limited to, past and future medical bills and expenses.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

## COUNT XVI
### Assault

214.    Plaintiff adopts and incorporates by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

215.    At all times relevant to this action, Defendant Officers and Defendant Administrators acted in concert and joint action with one another.

216.    Defendants, in words and actions, acted with intent and capability to do bodily harm to Mr. Wallace.

217.    Defendants intended to cause, and did cause, Mr. Wallace to suffer apprehension of immediate battery.

218.    Defendants' conduct was perpetrated with actual malice.

219.    Defendant Officers were acting on orders, directly or indirectly, from Defendant Administrators.

220.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and as stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past and future

medical bills and expenses, past and future lost time and wages from work, past and future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

## COUNT XVIII
### Battery

221.     Plaintiff adopts and incorporates by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

222.     Under the direction and encouragement of Defendants, inmates brutally attacked and beat Mr. Wallace on numerous occasions, subjecting him to severe bodily injury.

223.     The actions described herein constitute an intentional touching of Mr. Wallace, undertaken with actual malice.

224.     As a direct and proximate result of the aforesaid conduct, actions and inactions of Defendants and as stated elsewhere herein, Plaintiff was caused to suffer and continues to suffer temporary and permanent physical injuries, physical pain and suffering, mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame, loss of enjoyment of life and disability, an inability to perform and enjoy his normal and usual activities, and economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages from work, past and

future lost earning capacity and unnecessary attorneys' fees, all to the great detriment of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial.

## **JURY DEMAND**

Plaintiff demands a jury trial as to all claims so triable.

Respectfully submitted,


HANSEL LAW, P.C.


_____/s/_Erienne A. Sutherell_____
Cary J. Hansel
Erienne A. Sutherell
2514 North Charles Street
Baltimore, Maryland 21218
Phone: (301) 461-1040
Fax: (443) 451-8606
*Counsel for Plaintiff*